UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA          :
                                  :
                                  :  94 Cr. 134 (MBM)
                                  :
      -against-                   :
                                  :  OPINION AND ORDER
                                  :
ESTEBAN GONZALEZ,                 :
                                  :
                  Defendant.      :
----------------------------------X


APPEARANCES:

MICHAEL J. GARCIA, ESQ.
United States Attorney for the
Southern District of New York
JOHN J. O'DONNELL, ESQ.
Assistant United States Attorney
One Saint Andrews Plaza
New York, NY 10007
(212) 637-2415

ALEXANDER E. EISEMANN, ESQ.
Attorney for Defendant
305 Broadway, Suite 602
New York, NY 10007
(212) 420-8300

MICHAEL A. YOUNG, ESQ.
Attorney for Defendant
165 Christopher Street
New York, NY 10014
(212) 242-4336

MICHAEL B. MUKASEY, U.S.D.J.

Defendant Esteban Gonzalez was convicted by a jury on November 1, 1994, of possessing a firearm after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). On November 11, 1996, Gonzalez was sentenced by the trial judge, the late Hon. Whitman Knapp of this court, principally to a 180-month term of imprisonment, although his U.S. Sentencing Guidelines range called for a sentence of 235 to 280 months. Judge Knapp gave no reason for the downward departure. On appeal by Gonzalez of his conviction and by the government of his sentence, the Court of Appeals, in an opinion reported at 110 F.3d 936 (2d Cir. 1997), upheld the conviction but vacated the sentence and remanded for resentencing. In September 1999, no resentencing having yet occurred, Gonzalez filed a post-conviction motion before Judge Knapp, claiming that the lawyer who represented him at trial, Pasquale ("Pat") Stiso, had provided ineffective assistance due to a conflict of interest that arose because Stiso and Gonzalez belonged either during or before the trial to the same drug gang, the "Maisonet Organization," headed by Francisco Maisonet. Following a lengthy if intermittent hearing, Judge Knapp denied the motion in September 2003 on grounds discussed below. <u>United States</u> v. <u>Gonzalez</u>, 285 F. Supp. 2d 357 (S.D.N.Y. 2003). Thereafter, the case was reassigned to my docket.

1

Gonzalez now moves to compel my recusal and the disqualification of Assistant U.S. Attorney Richard D. Owens, who has been involved in this litigation since 1994, and to set aside Judge Knapp's determination on a variety of grounds. For the reasons explained below, the motions are denied.

I.

The facts underlying Gonzalez's conviction, as proved at trial, were that on the evening of February 24, 1994, an off-duty police officer, Thomas Crowe, noticed Gonzalez and two others acting in a manner that drew his attention and suspicions. When Crowe identified himself and sought to investigate, Gonzalez fired a shot at him. Crowe returned fire, and saw Gonzalez and the others throw their weapons over a hedge and run away. Crowe arrested one of Gonzalez's confederates; fellow officers arrested Gonzalez a short while later, based on Crowe's description. See United States v. Gonzalez, 110 F.3d 936, 939-40 (2d Cir. 1997).

It has been acknowledged by both sides that after Gonzalez's appeal and the government's cross-appeal were before the Second Circuit, but before that Court's decision, Judge Knapp suggested to a prosecutor, Richard D. Owens, that the parties resolve the matter by having the defendant withdraw his appeal in return for the government withdrawing its cross-appeal. See Government's Memorandum of Law in Response to Defendant's Motion

to Recuse the Court, Etc. at 11)  Gonzalez rejected the suggestion, although he claims now that had he known it came from Judge Knapp, his strategy would have been different.

In an application to Judge Knapp following the Circuit's affirmance of his conviction and remand for resentencing, Gonzalez moved for a new trial pursuant to Fed. R. Crim. P. 33, or in the alternative for post-conviction relief under both § 2255 and § 2241 of Title 28.  (See Letter of Alexander E. Eisemann, Esq. to Hon. Whitman Knapp (July 18, 2003), Exhibit A to Government's Memorandum of Law in Response to Defendant's Motion to Vacate, Etc., Jan. 14, 2005)  Gonzalez argued that (i) Stiso, who had pleaded guilty in August 1998 to a four-count information charging him with crimes related to his participation in the activities of the Maisonet Organization, had a conflict of interest with respect to Gonzalez that arose from the lawyer's allegiance to that organization, and (ii) Stiso's alleged professional errors were both evidence of that conflict and independent bases in themselves for a finding of constitutionally ineffective representation.  Judge Knapp ordered an evidentiary hearing to determine whether Stiso had participated in the criminal activities of the Maisonet Organization at or before the time he represented Gonzalez at trial, and, if so, whether such participation had resulted in ineffective assistance to Gonzalez.  During the post-conviction

proceeding before Judge Knapp, Gonzalez moved to add claims, including the claim that the government had withheld disclosure of certain <u>Brady/Giglio</u> material relating to Officer Crowe.

Following the hearing, Judge Knapp issued a written opinion in September 2003 in which he found that Gonzalez had failed to prove any of the following propositions: (i) Stiso had engaged in criminal conduct related to Maisonet before or during Gonzalez's trial in October 1994; (ii) Stiso had participated in the criminal conduct that formed the basis for Gonzalez's conviction; (iii) Stiso had a loyalty to Maisonet that conflicted with his duty to Gonzalez and therein labored under an actual conflict of interest; (iv) Stiso had committed professional errors that brought his representation of Gonzalez below the "objective standard of reasonableness" that measures the performance of lawyers pursuant to <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 688 (1984); and (v) there was a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>id.</u>, at 694; <u>see</u> <u>Gonzalez</u>, 285 F. Supp. 2d at 360. Judge Knapp declined to consider the <u>Brady/Giglio</u> claim referred to above.

Gonzalez, purporting to act here under Federal Rules of Civil Procedure 59(a), 59(e) and 60(b), attacks Judge Knapp's September 2003 opinion on a variety of grounds. Specifically, he asserts that (i) because he had not been resentenced at the time

Judge Knapp decided his application, the judge did not have jurisdiction to render a decision; (ii) Judge Knapp was mentally incompetent at the time he held the evidentiary hearing and issued the September 2003 opinion; (iii) Judge Knapp's opinion contained numerous errors of law and fact that show Judge Knapp was incompetent and require that the decision be set aside; (iv) the judge abused his discretion in failing to reach certain claims and in excluding evidence; (v) the judge incorrectly decided other issues Gonzalez had argued; (vi) the government improperly withheld evidence relating to claims that Judge Knapp rejected in the September 2003 opinion; (vii) the hearing should be reopened to allow Gonzalez to present newly discovered evidence; and (viii) Judge Knapp should have recused himself <u>sua sponte</u> based on the <u>ex parte</u> conversation with Assistant U.S. Attorney Richard Owens that forms the basis for Gonzalez's demand that Owens be disqualified.

## II.

Gonzalez's motion to compel my recusal and to require that the case be reassigned is related in part to his claim that Judge Knapp was incompetent at the time he heard and decided Gonzalez's application to set aside his conviction. In essence, Gonzalez argues that if it were found that this claim had merit, that finding would reflect poorly on me in my role as Chief

Judge, in that it would suggest I had failed to notice that Judge
Knapp no longer was able to handle cases, and to take necessary
action.  The possibility of such a finding, he argues, means that
I have a conflict of interest in hearing this matter.  Further,
he argues that because Stiso lied to me when Gonzalez was before
me in another case, and violated an order not to disclose the
names of cooperating witnesses, I was in some sense the "direct
victim of Stiso's crimes", and therefore should not be "in the
unseemly position of judging his [Stiso's] credibility[.]"
(Young Aff. at 19-20; May 13, 2004 Tr. at 3-5)  Finally, he
argues that the case was reassigned from Judge Knapp to me
improperly in that it was not assigned through random selection.
In a recent expansion of this application, he seeks not merely
another judge, but another judge from outside this circuit.

        Gonzalez's argument suffers from numerous flaws, of
which the following are the most obvious.  First, Gonzalez cites
no statute or rule that confers on the Chief Judge of a district
the duty or obligation to monitor the competence of the judges
within the district, or to act in the event he believes a judge
is not mentally competent.  Small wonder; there is no such
statute or rule.  Rather, under 28 U.S.C. § 351(a), complaints
from "any person" asserting a judge's "mental or physical
disability" are properly addressed in the first instance to the
Chief Judge of the circuit where the judge sits.  It is the

responsibility of the Chief Judge of the circuit and the circuit council to identify and process each such complaint, and, if necessary refer it to the Judicial Conference of the United States.  See 28 U.S.C. §§ 351-354.  The applicable statutes place no responsibility on the Chief Judge of the district with respect to a judge in the district who is unable to carry out his duties.  Therefore, there can be no damage to the Chief Judge's -- which is to say my -- image from any failure to detect and mitigate the effects of a fellow judge's alleged inability to perform his duties.

Second, with respect to my having been the alleged "victim" of Stiso's prior crimes, it is apparent that the only knowledge I acquired came about as the result of my having heard the facts underlying a prior prosecution of Gonzalez.  However, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of . . . prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  United States v. Liteky, 510 U.S. 540, 555 (1993).  Although Gonzalez cites Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 864-69 (1968), for the unexceptional principle that a court should avoid even the appearance of a conflict, he fails to show how there is or seems to be a conflict here.  He fails to articulate how Stiso's prior

7

appearance before this court makes it more likely or less likely that I would find Stiso to have been involved in the Maisonet organization at or before the time he represented Gonzalez before Judge Knapp.  Particularly in view of the excerpt from <u>Liteky</u> quoted above, it is apparent that this line of argument is simply persiflage.  Here, one would do well to recall another hoary principle, which is that a judge is just as strongly obligated not to recuse himself when there is no basis to do so as he is to recuse himself when there is such a basis.  <u>See</u> <u>In re Drexel Burnham Lambert Inc.</u>, 861 F.2d 1307, 1312 (2d Cir. 1988).  I can see no basis for recusal here, and I decline to hallucinate one.

Second, with respect to random assignment, the local rules of this district with respect to the division of business among judges begin with an introductory paragraph that reads in pertinent part as follows: "These rules are adopted for the internal management of the case load of the court and shall not be deemed to vest any rights in litigants or their attorneys[.]" S.D.N.Y. Rules for the Division of Business Among District Judges.  Judges often volunteer to take cases from one another; the rules permit that practice.  In any event, as the local rules themselves make clear, Gonzalez, having failed to present any valid reason why I should not hear this case, he has no defensible interest in having a case once randomly assigned to Judge Knapp randomly assigned yet again.  Inasmuch as there is no

reason for me to step aside in this case, there is <u>a fortiori</u> no
reason to engage the services of a judge from outside this
circuit.

III.

Gonzalez's application to disqualify Assistant U.S.
Attorney Richard Owens is no more weighty.  This application
arises from Judge Knapp's having suggested to Owens <u>ex parte</u> that
the government agree to abandon its appeal based on Judge Knapp's
failure to provide a basis for his downward departure in return
for Gonzalez's agreement to abandon his appeal of his conviction,
and that Owens pass on that suggestion to defense counsel.  The
conversation between Judge Knapp and Owens is set forth in Judge
Knapp's September 2003 opinion, <u>see</u> 285 F. Supp. 2d at 360 n.3,
in a March 16, 2002 letter from Gonzalez to Owens (Government's
Memorandum of Law In Response to Defendant's Motion to Recuse the
Court, Etc., Ex. B), and in a May 6, 2002 letter from Owens to
Judge Knapp (<u>see</u> Young Aff. Ex. B).  Gonzalez's theory appears to
be that Owens must testify to his conversation with Judge Knapp,
and therefore cannot be both a witness and an attorney for the
government in the same case.

A prosecutor will be disqualified based on his status
as a witness only when there is a "compelling and legitimate
reason" to call him as a witness.  <u>United States</u> v. <u>Regan</u>, 103

9

F.3d 1072, 1083 (2d Cir. 1997) (citing <u>United States</u> v. <u>Schwartzbaum</u>, 527 F.2d 249, 253 (2d Cir. 1975)). Here, there is neither. The conversation with Judge Knapp was an open secret. Moreover, Owens had a substantial role in prosecuting Gonzalez, and his disqualification would prejudice the government significantly. That is another consideration that weighs against granting Gonzalez's request. <u>See</u> <u>Regan</u>, 103 F.3d at 1083 (citing "significant role" played by the prosecutor whose disqualification was sought and the "unwarranted waste of resources" that would have resulted from having to replace her).

For the same reasons that Judge Knapp's conversation with Assistant U.S. Attorney Richard Owens does not require the prosecutor's disqualification, neither does it require that Judge Knapp have disqualified himself <u>sua sponte</u>.

## IV.

The first of defendant's claims addressed to Judge Knapp's decision itself is that he did not have jurisdiction to render it. He points out that 28 U.S.C.§ 2255 permits a constitutional challenge by a prisoner "in custody under sentence of a court," and that when the Second Circuit vacated his sentence and remanded the case to Judge Knapp, he was no longer "under sentence of a court." Because Judge Knapp heard his challenge to the adequacy of Stiso's representation before

resentencing him, Gonzalez argues, the resulting decision is a nullity.

However, Gonzalez petitioned as well pursuant to 28 U.S.C. § 2241, which permits a prisoner to claim that he is "in custody in violation of the Constitution or laws . . . of the United States," regardless of whether or not he has been sentenced. See 28 U.S.C. § 2241(c)(3). His lawyer's July 18, 2003, letter to Judge Knapp, attached as Exhibit A to the government's memorandum in response to the petition, states explicitly that Gonzalez wished "to base the application not only on 28 U.S.C. § 2255, but also on Fed. R. Crim. P. 33, as well as 28 U.S.C. § 2241," and cites United States v. Triestman, 178 F.3d 624, 627-28 (2d Cir. 1999) as having applied § 2241 in "analogous circumstances." The letter notes that Gonzalez made this choice based on "strategic decisions about whether it is in his interest for any new trial order to be entered before or after sentencing." (See id.)

Whether or not the circumstances in Triestman -- where a § 2255 petition was no longer available, and a change in the law had created a defense of innocence that did not exist earlier -- were in fact "analogous" to those present here at the time Gonzalez sought for "strategic" reasons to move before sentencing, and were so "highly unusual" as to warrant relief under § 2241, see Triestman, 178 F.3d at 627, referring to the

court's earlier decision permitting resort to § 2241 by a
prisoner in Triestman's predicament, Triestman v. United States,
124 F.3d 361, 380 (2d Cir. 1997), I do not know, because Gonzalez
did not explain how Triestman was "analogous."  I am also aware
generally that a court should be especially wary of finding
subject matter jurisdiction to have been created by judicial
estoppel, presumably even when it is confronted with the
egregious spectacle of a lawyer who asks a court to hold a
hearing pursuant to a statute and then, displeased with the
outcome, claims the statute conferred no power to hold the
hearing in the first place.  See Lydon v. Boston Sand & Gravel
Co., 175 F.3d 6, 14 (1st Cir. 1999) ("Courts have been cautioned
to give careful consideration to the application of judicial
estoppel when subject matter jurisdiction is at stake.")
However, it is clear here that the issues surrounding Stiso's
representation would have been heard in a federal court, whether
after sentencing pursuant to 28 U.S.C. § 2255, or before, as they
were, pursuant to 28 U.S.C. § 2241.

        There is no authority cited by Gonzalez holding
squarely that § 2241 is unavailable in these circumstances.
United States v. Pirro, 104 F.3d 297 (9th Cir. 1997), which
Gonzalez cites, involved a defendant who had not yet brought a
direct appeal and sought to argue ineffective assistance of
counsel in a motion under § 2241.  See id. at 297.  The Court

declined to permit that, noting that to allow it would invite simultaneous appeals and § 2241 petitions, and resulting chaos. Id. at 299. Here, however, Gonzalez had already taken his direct appeal, and could raise the issues arising from Stiso's conviction only on post-conviction motion. Moreover, Stantini v. United States, 140 F.3d 424, 426 (2d Cir. 1998), suggests that § 2241 may have been available here. In that case, a defendant filed § 2255 petitions both before and after sentencing, arguing his lawyer had been ineffective. The government argued that the second motion was a second or successive petition, subject to the gatekeeping provisions of that portion of § 2255 introduced by the Antiterrorism and Effective Death Penalty Act of 1996. The Court of Appeals disagreed, holding that the defendant's first petition "is properly characterized as a motion for a writ of habeas corpus made pursuant to § 2241(c)(1) or (c)(3) as [the defendant] was in federal custody, though not pursuant to a judgment or a sentence, at the time it was made and decided." Id. at 296.

Gonzalez and his lawyer were aware that the matter was not free from doubt inasmuch as Gonzalez, represented by Eisemann, tried to bring a § 2241 petition before sentencing to argue ineffective assistance of trial counsel in connection with another conviction in this court. In that case, Judge Cote found that the appropriate course was to impose sentence and then let

13

Gonzalez petition pursuant to 28 U.S.C. § 2255; she did not hold that there was no jurisdiction in the court to hear a § 2241 petition. See United States v. Gonzalez, 2001 WL 987866 (S.D.N.Y. Aug. 30, 2001)  However, another judge of this court has permitted a pre-sentence § 2241 petition arguing ineffective assistance of counsel, relying on Stantini. See United States v. Mocombe, 2000 WL 488464 (S.D.N.Y. Apr. 24, 2000), aff'd 4 Fed. Appx. 52 (2d Cir. 2001).

In any event, as suggested by Stantini, and a hearing having been held, Judge Knapp had jurisdiction to decide the issue Gonzalez placed before him.


V.

As to the substance of Gonzalez's arguments addressed to Judge Knapp's opinion denying relief, the government notes that those arguments do not actually comprise a motion under Rules 59(a) and (e), and 60(b), because they are not addressed to the hearing Judge Knapp held, but rather to Gonzalez's underlying conviction.  In any event, to the extent that Gonzalez relies on Rule 59(a) and (e), which permits motions for a new trial and to amend a judgment, that Rule requires that the motion be filed within ten days of the judgment in question.  Gonzalez's application is untimely, having been filed at the earliest on September 29, 2004.

As mentioned, Gonzalez cites also Rule 60(b), which permits a party to move for relief from a "final judgment, order or, proceeding" for any of several reasons, including: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); . . . (4) the judgment is void . . . or (6) any other reason justifying relief from the operation of the judgment." However, under that Rule, relief is available in a habeas corpus case "only when the Rule 60(b) motion attacks the integrity of the habeas proceeding rather than the underlying criminal conviction." Harris v. United States, 367 F.3d 74, 77 (2d Cir. 2004). The government suggests I can refer the motion to the Court of Appeals as a second and successive habeas corpus petition, or simply deny it as beyond the scope of Rule 60(b).

Notwithstanding the government's suggestion, part of Gonzalez's motion in fact "attacks the integrity of the habeas proceeding" insofar as Gonzalez asserts that Judge Knapp was not competent at the time he heard and decided the proceeding. This claim, however, is patently devoid of merit. It is based on alleged observations by defendant's counsel (Defendant's Revised Memorandum of Law, Etc., at 2-9), and on defendant's claim that a Deputy U.S. Marshal passed a comment suggesting Judge Knapp was incompetent (Gonzalez Declaration ¶ 3). Thus, counsel assert

15

that the judge's "deteriorated mental state was widely recognized by all who came into contact with him."  (Defendant's Revised Memorandum of Law, Etc. at 6)

However, these bare claims, brought after Judge Knapp's September 2003 opinion was issued, are decisively refuted by letters from each of defendant's attorneys, written about six months before that opinion.  Those letters were written in response to Judge Knapp's suggestion that he might reassign the case.  Michael A. Young, Esq., apparently then new to the case, urged that he be given an opportunity to be heard before any such step was taken because "re-assignment would be extremely prejudicial to defendant Gonzalez."  (Government's Memorandum of Law In Response, Etc. Ex. D)  Young stated his "understanding that there have been lengthy hearings . . . and that your Honor is the only person in a position to assess the credibility of the witnesses who appeared before you and make the appropriate findings of fact."  (Id.)

Alexander Eisemann, Esq., who had handled the hearing to that point, pronounced Judge Knapp "uniquely positioned to make the factual findings necessary to apply the controlling legal principles."  (Government's Memorandum of Law In Response, Etc., Ex. C at 2)  "No other judge," Eisemann declared, "could step in at this point and make the credibility findings that must be made to resolve the core factual disputes."  (Id.)  After

16

expressing abject gratitude to Judge Knapp for his service as a
Senior Judge, Eisemann stated: "I most respectfully request that
your Honor see this motion through to its conclusion." He closed
with the "sincere[] hope your Honor will maintain this motion on
your docket and that you will make the factual findings necessary
to resolve it." (Id. at 3)

In the reply memorandum in behalf of Gonzalez, Eisemann
advances an explanation for this inconsistency that is, if
anything, an even bigger jaw-dropper than the inconsistency
itself. That reply memorandum, backed now by an affidavit,
asserts, as did the initial memorandum that "Judge Knapp's law
clerk deliberately telegraphed that Judge Knapp viewed
defendant's per se conflict claim favorably," and, if this court
thinks the obvious contradictions between the 2003 correspondence
and Gonzalez's current position are material, seeks a hearing at
which counsel would prove the "subjective motivation" for their
letters to Judge Knapp, as follows:

> It was certainly not because they believed Judge Knapp
> was mentally competent at the time. Instead, it
> was because they believed he had already decided to rule in
> defendant's favor at a time when he had still been
> competent and had made that clear to his law clerk and
> counsel expected chambers to follow that direction.

(Corrected Reply Etc. at 6; see also Eisemann Feb. 3, 2006 Aff. ¶
7). In other words, Eisemann and Young seek a hearing where they
would establish that both of them lied to a court once in order
to protect an anticipated victory, but that they would not lie to

17

a court again in order to reverse an actual defeat.[1]

Although there may exist somewhere on this globe a tribunal that could summon just the right blend of cynicism and naivete necessary to support that finding, our law provides a doctrine to make sure that this tribunal isn't it.  That doctrine is called judicial estoppel, and holds that "'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'"  New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)).  After having convinced Judge Knapp to keep the case, counsel for Gonzalez cannot be heard now to complain that he should not have done so.  See Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 147-48 (2d Cir. 2005) (judicial estoppel established if later position is clearly inconsistent with earlier position, acceptance of later position would show that either first or second court was misled, and party asserting the inconsistent position would impose an unfair detriment on the

---

[1] I leave lying where it fell Eisemann's suggestion that if Judge Knapp "had already decided to rule in defendant's favor when he had still been competent and had made that clear to his law clerk," it was the proper function of "chambers" –- otherwise unidentified –- to file an opinion in Judge Knapp's name later on embodying that decision, whether or not Judge Knapp was competent to sign it.  (Corrected Reply Etc. at 6)

other party if not estopped).

As he was asked to do, Judge Knapp did make findings, and they are entitled to great weight and deference.  See, e.g., United States v. Gaines, 295 F.3d 293, 298 (2d Cir. 2002) (District court's findings of fact reviewed "for clear error"). After-the-fact assertions by interested persons such as defense counsel in this case, in direct conflict with statements they made earlier, are entitled to neither weight nor deference.

The motion to set aside Judge Knapp's findings on the ground that he was not competent to make them is denied.

To the extent that Gonzalez's claim of newly discovered evidence may be said to qualify for relief under Fed. R. Civ. P. 60(b)(2), Gonzalez has not shown that the newly discovered evidence (i) consists of facts that existed at the time of the hearing, (ii) of which he was unaware despite the exercise of due diligence, (iii) is admissible and significant enough to have changed the outcome of the hearing, and (iv) not merely cumulative.  See United States v. Int'l. B'h'd. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001).

The proffered evidence is that another criminal associate of Maisonet, Miguel Rodriguez, could testify to an occasion when Stiso misrepresented Rodriguez's identity during a state court bail hearing in order to conceal Rodriguez's criminal history so that Rodriguez could secure bail.  This is said to

19

constitute evidence that Stiso had ties to the Maisonet organization and committed a crime in its behalf.  However, it is plain from Gonzalez's own submissions that his attorney was aware of Rodriguez at the time of the hearing, but declined to press Judge Knapp to call him as a witness because he thought Rodriguez would not be cooperative, and he thought in any event that Stiso would admit to the incident and was surprised when Stiso denied it.  (Eisemann Feb. 3, 2006 Aff. ¶¶ 8-9)  The evidence is in no sense newly discovered.

Moreover, the evidence, even if received, would have proved nothing beyond Stiso's commission of yet another crime, the matter of aiding the Maisonet organization being entirely beyond the competence of the witness and entirely argumentative.

## VI.

The remainder of Gonzalez's motion is addressed to his conviction and not to the hearing before Judge Knapp.  As discussed above, that may be a proper subject for a petition pursuant to Section 2255, but not for a motion pursuant to Rule 60(b).  However, also for reasons discussed above and reasons advanced by Gonzalez himself, his current papers cannot be treated as a petition pursuant to Section 2255 because he is not in custody "under sentence of a court" as required pursuant to that section.

For the above reasons, Gonzalez's motion is in all respects denied. The Court has a Presentence Investigation Report so that Gonzalez can be resentenced in accordance with the direction of the Court of Appeals. That sentencing will take place on April 27, 2006, at 9:15 a.m., in Courtroom 21B of the United States Courthouse, 500 Pearl Street, New York, NY 10007. Defendant will make any presentence submission by April 5, 2006; the government will respond by April 14, 2006.

SO ORDERED:

Dated: New York, New York
     March 22, 2006

Michael B. Mukasey,
U.S. District Judge

21